## Hagerty *versus* Albright.
## Helsel *versus* Same.

1. A testator bequeathed to his daughter Anna £450, and if " Anna dies without heirs, and immediately thereafter of John's (her husband) death, that said portion shall be due and payable to her two sisters * * share and share alike, and solely by them redeemable." *Held*, that on the death of Anna without children, the legacy passed to her sisters.

2. The words " if Anna dies without heirs" do not imply an indefinite failure of issue, because the legacy was to go over at Anna's death without children.

3. In a bequest of personalty, very slight circumstances are sufficient to show an intention that the limitation over on death without issue is to take effect at a definite time, to wit, the death of the first taker.

4. In a partition in 1835 of land devised to the testator's sons, they charged one-half of Anna's legacy on each part, the interest to be paid to her for life, and the principal to her sisters at her death. Anna died in 1859, having regularly received the interest from the owners of the land, and having never demanded the principal. *Held*, that her representative was concluded by her acts, even if the legacy were construed an absolute gift to her.

ERROR to the Court of Common Pleas of *Bucks county*.

These cases were actions of *assumpsit* by Jacob Albright and Judith his wife, Henry Bleim and Catharine his wife, Thomas Geisinger and Susanna his wife, Almeda Beck, Cecilia Beck, Jeremiah Fluck, Judith Fluck, Jacob Fluck and Charles Fluck; the first against John Hagerty, and the other against Philip Helsel and Michael Helsel, in which a case was stated for the opinion of the court on the following facts:—

David Stover died January 1st 1821, having by his will devised and bequeathed as follows:—

"Item—I give and bequeath unto my true and well-beloved daughter, Anna Stover, now wife of John Fretz, * * four hundred and fifty pounds, and it is my will if Anna dies without heirs and immediately thereafter of John's death, that said portion shall be due and payable to her two sisters, Elizabeth and Susanna, to them, their heirs and assigns for ever, share and share alike, and solely by them redeemable. * * * Item and lastly—I give and bequeath unto my two youngest sons, namely, Joseph and Abraham Stover, all my remaining estate, both real and personal, and all instruments of writing whatsoever after the aforesaid legacies are paid, and my debts and funeral expenses satisfied, and two *mavel* stones *proceeded* to my grave, to them, their heirs and assigns, benefit and behoof for ever and ever, share and share alike."

On the 14th of March 1835, Joseph and Abraham made an amicable partition of the real estate devised to them, and released to each other their respective parts, each of which was expressly made subject " to the payment of six hundred dollars, to be paid at the decease of Anna Fretz, widow of John Fretz, deceased, the annual interest thereof to be paid to the said Anna during her

[Hagerty *v.* Albright.]

natural life, and at her decease the said sum of six hundred dollars to be paid to Elizabeth Geisinger and Susanna Stover, sisters of the said Anna Fretz."

Abraham having died, his part was sold, April 4th 1846, under proceedings in partition, and conveyed, expressly subject to the payment of the $600 with interest, as in the first deed of partition.  This tract was sold to Hagerty, the defendant, on the 2d of April 1852, the deed to him containing the following clause : " Six hundred dollars of the consideration money above mentioned, however, to be and remain in the premises during the natural life of Anna Fretz, widow of John Fretz, deceased, now married to Abraham Stover, the legal interest thereof to be paid to the said Anna, *annually*, on the 1st day of April in any year during her natural life ; and immediately after her death the said sum of six hundred dollars to her two sisters, Elizabeth Geisinger and Susanna Stover, now deceased, in equal shares, or their legal representatives."

Joseph, on the 29th of March, sold his part to Michael and David Helsel, the deed containing this clause : " The sum of six hundred dollars, part of the purchase-money aforesaid (being a dower), shall be and remain in the premises above described, and be a lien thereon, the annual interest thereof, at 6 per cent., to be paid to Anna Stover, formerly Fretz, widow of John Fretz, deceased, by the said Michael Helsel and David Helsel, their heirs and assigns, during her natural life ; and at the decease of the said Anna Stover, they, the said Michael Helsel and David Helsel, their heirs and assigns, shall well and truly pay the aforesaid sum of six hundred dollars to Elizabeth Geisinger and Susanna Stover, sisters of the said Anna Stover, widow of John Fretz, deceased." The title of this part is now in the defendants.

Anna having survived her husband Fretz, on the 10th of March married Abraham Stover (who had been the husband of her sister Susanna Stover, then deceased), and died April 11th 1859, leaving him to survive her, but leaving no children.  From the date of the partition till her death, Anna received her annual interest from the successive owners of the lands.  After her death her husband took out administration on her estate, and having indemnified the defendants, received from each of them the one-half of the sum charged on their respective tracts, claiming it as administrator of Anna.

The beneficial plaintiffs in these suits are the children and grandchildren of Elizabeth Geisinger, it being agreed that they are entitled to recover if Elizabeth, were she living, could recover.

The question submitted to the court was " whether the plaintiffs are entitled to recover of the defendants the money bequeathed to Elizabeth Geisinger, on the death of Anna Fretz without heirs ; and whether, under the will and the several subjections in the deed, Abraham Stover, the second husband of the said Anna,

is her heir within the purview of the will, and the force and effect of the Intestate Laws? and whether the said sums were legally paid to Abraham Stover, administrator of Anna Stover, deceased. If the court be of opinion that the plaintiffs are entitled to recover, then judgment to be entered in each case in favour of the plaintiffs, and against the defendants, John Hagerty and Michael Helsel, in the sum of $300, with interest from the date of the death of the said Anna Stover; if the court be of opinion that the plaintiffs cannot recover, then judgment to be entered generally for the defendants."

The court (Chapman, P. J.) delivered the following opinion:—

" David Stover, by his will, makes the following bequest: ' I give and bequeath unto my true and well-beloved daughter, Anna Stover, now wife of John Fretz, of Nockamixon township, four hundred and fifty pounds; and it is my will if Anna dies without heirs, and immediately thereafter of John's death, that said portion shall be due and payable to her two sisters, Elizabeth and Susanna, to them, their heirs and assigns for ever, share and share alike, and solely by them redeemable.'

" If, when applied to real estate, this clause would have conferred upon Anna Fretz an estate tail, it follows the gift of the £450 would have been absolute; and that it would is quite certain, for the word ' heirs' would have been construed to mean issue: Rewalt *v.* Ulrich, 11 Harris 388, and the words ' without issue' to mean an indefinite failure, unless there is something in the context to restrict the rule which declares that dying without issue shall be taken to contemplate an indefinite failure of issue. Is there anything which can be interpreted to have that effect, and to cut down the legal signification to a failure of issue at the death of the first taker? In regard to personal property very slight circumstances are laid hold of, as sufficient to indicate an intention that a limitation over on death without issue shall take effect at a definite time, to wit, on the death of the first taker: Bedford's Appeal, 4 Wright 22; Diehl *v.* King, 6 S. & R. 32; Eichelberger *v.* Barnetz, 17 Id. 295. The limitation over to persons in being, after the death of the first taker, of itself, it has often been held, raises a strong presumption that the testator did not contemplate an indefinite failure of issue. Here such presumption arises in full force, for the limitation over was expressly to his daughters Elizabeth and Susanna, then living.

" But the testator has employed language which must operate as a restriction upon the legal construction of the words dying ' without heirs' or issue. The legacy is to be *due* and *payable* to the sisters ' immediately *there*after of John's death.' Now, this is directly opposed to the idea of an indefinite failure of issue. If it entered into the mind of the testator that John might die before his wife Anna, it cannot be supposed he did not intend the

[Hagerty v. Albright.]

limitation to take effect upon Anna's death, without issue. She did survive her husband, and a contingency which the testator did not express happened. It must have been his intention that, as soon as John was out of the way, whether he died before or after his wife, upon her death without issue, the gift over should immediately vest. Any other construction involves an absurdity.

"A period is fixed for the legacy to become 'due and payable,' that is, immediately after John's death. This was an event certain to take place; and though the period was not, and could not, be as definitely determined as it was in the case of Nichols v. Hooper, 1 P. Wms. 198, 2 Jarman 311, which was a case held to relate to real estate, this principle must apply here. The postponement being only to the happening of an event certain to take place, and not beyond the time or limitation allowed by law, the contingency was not too remote. But when was it intended by the testator the limitation over to the ulterior legatees should vest? Surely not at the death of John, for nothing is given to him, he was not indicated as a beneficiary, the payment to the sisters of Anna was merely postponed during life. Why this was cannot be clearly determined, but there must have been some time for the legacy to vest in them. That time was her death; and the rule is where the postponement of distribution takes place from considerations not connected with the legatee personally, but attributable to some motive of convenience to the estate of the testator, the vesting will relate back to the anterior event—that was in this case the death of Anna. If, then, it was the intention the legacy should vest in the ulterior legatees on the death of Anna, the idea of an indefinite failure of issue must be dismissed, and it must be held the testator meant a failure of issue at her death only, which disposes of the case.

"It is contended that under the ruling of Gibbons v. Fairlamb, 2 Casey 217, the second husband of Anna, to wit, Abraham Stover, would take as 'heir' under the will. But surely he can have no claim on this ground, when the testator expressly excluded the first husband from such a pretension. Besides, the word 'heirs,' as used in this will, is to be treated as a word of limitation, and not as a word of description. This case differs entirely from Gibbons v. Fairlamb, 2 Casey 217, cited on the argument.

"It was much discussed whether this legacy was charged on the land. Under the circumstances, it is immaterial whether it was or was not, although I may remark, as the residue of real and personal estate, after the payment of debts and legacies, was a blended fund, and thus given to Abraham and Joseph, there can be no doubt but the will made it a charge upon the land though the land was not the primary fund out of which the legacy was to be paid. The deeds by Joseph and Abraham subjected the land to the payment of the money, and agreeably to the disposition in

[Hagerty *v.* Albright.]

the will as the intention of the testator has been interpreted, and agreeably, too, to what appears to have been the understanding of Anna, for instead of claiming the principal, she accepted of the annual interest of the respective owners of the land up to the time of her death.

" Judgment will be entered in favour of the plaintiffs against the defendants, in each case, for the sum of $300, with interest from the death of Anna Stover, previously Fretz, to the present time, the amount to be ascertained by the prothonotary."

The judgment thus entered was assigned for error.

*J. L. Dubois*, for plaintiffs in error.—The gift was an absolute one to Anna: Rewalt *v.* Ulrich, 11 Harris 388; being absolute, no qualification annexed will defeat it: Reifsnyder *v.* Hunter, 7 Harris 41; Walker *v.* Vincent, Id. 369. Abraham Stover would be entitled as heir of his wife: Gibbons *v.* Fairlamb, 2 Casey 217; Porter's Appeal, 9 Wright 201. This legacy is a charge on the land and also an absolute gift: Fisher *v.* Redsecker, 7 Harris 113.

*H. P. Ross*, for defendants in error.—The defendants accepted conveyances charged with the payment of these sums to the defendants in error, and are liable by their own contract: Pidcock *v.* Bye, 3 Rawle 185; Unangst *v.* Kraemer, 8 W. & S. 391. The acts of Anna in her lifetime conclude her. She suffered the money to remain with the executors from 1821 to 1835; acquiesced in the arrangement by which under the partition, &c., the land was chargeable with the interest to her and the principal to her sisters, and received the interest all her life: Ackla *v.* Ackla, 6 Barr 229; Whichcote *v.* Lyle, 4 Casey 73; Share *v.* Anderson, 7 S. & R. 43.

The gift to Anna was for life only, for the limitation was on an event which must necessarily occur within the time limited by law. And as to personalty, slight circumstances are laid hold of to restrain the limitation to a definite period: Bedford's Appeal, 4 Wright 22, 6 S. & R. 32, 17 Id. 295; Johnson *v.* Currin, 10 Barr 498; Moffit *v.* Strong, 10 Johns. 16; *vide* also Wright *et ux. v.* Brotherton, 2 Rawle 133.

The opinion of the court was delivered, May 15th 1866, by

WOODWARD, C. J.—If the opinion of the learned judge on the bequest of 450*l.* to Anna Fretz in her father's will were more doubtful than it is, there is a circumstance disclosed in the stated case which would dissuade us from placing a different construction upon the will. I allude to the fact, that in 1835, when Abraham and Joseph Stover, sons and residuary devisees of the testator,

[Hagerty v. Albright.]

made partition between themselves of the real estate, they charged half of Anna's legacy on 153 acres which Joseph took, and the other half on 134 acres which Abraham took, the annual interest thereof to be paid to Anna during her life, and at her decease the principal to be paid to her sisters Elizabeth Geisinger and Susanna Stover.

This was a construction of the testator's will that gave Anna only a life interest in the legacy, and she acquiesced in that construction all her life by receiving the annual interest from her brothers or their successors in title without once demanding the principal to be paid to her. And these successors read the will in the same way, for they accepted title-deeds that amounted to covenants on their parts to pay the interest to Anna for life, and the principal after her death to her sisters or their heirs.

For more than thirty years, therefore, all parties in interest have concurred in understanding the will to mean just what the learned judge expounded it to mean. Anna, for whose benefit this particular bequest was intended, enjoyed it during life in the manner she thought her father intended, and now, if it could be demonstrated, never so clearly, that he meant she should have had an absolute interest in the legacy instead of its usufruct, it would ill become us to say in direct opposition to the terms of the will, that it shall not be " due and payable to her two sisters, Elizabeth and Susanna, to them, their and assigns for ever."

But it is not utterly certain that the technical construction of the words, " if Anna dies without heirs," would impute an indefinite failure of issue, because the intention that the legacy should go over, an event which was before the testator's mind, is most clearly expressed. What was the event ? Manifestly the death of Anna without living children. It was a bequest of personal property, and in such cases it was said in Bedford's Appeal, 4 Wright 22, that very slight circumstances are laid hold of as sufficient to indicate an intention, that a limitation over on death without issue shall take effect at a definite time, to wit, at the death of the first taker.

The circumstances in this case are of a nature imperatively to demand such a construction, and therefore the judgment in each case is affirmed.